**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Nicole L. Greenblatt, P.C. (admitted *pro hac vice*)
Jeffrey Goldfine (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
nicole.greenblatt@kirkland.com
jeffrey.goldfine@kirkland.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
William E. Arnault, P.C. (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
william.arnault@kirkland.com

*Co-Counsel to the Plan Administrator and Wind-Down Debtors*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Daniel J. Harris, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
dharris@coleschotz.com

*Co-Counsel to the Plan Administrator and Wind-Down Debtors*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>INVITAE CORPORATION, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-11362 (MBK)<br><br>(Jointly Administered) |
| NATERA INC.,<br><br>Plaintiff,<br><br>v.<br><br>INVITAE CORPORATION, *et al.*,<br><br>Defendants. | Adv. Pro. No. 25-01015 (MBK) |

# DEBTORS' REPLY IN SUPPORT OF MOTION TO DISMISS

[1] The last four digits of Debtor Invitae Corporation's tax identification number are 1898. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://www.veritaglobal.net/invitae. The Debtors' service address in these chapter 11 cases is 1400 16th Street, San Francisco, California 94103.

# TABLE OF CONTENTS

**Page**

**INTRODUCTION** .......... **1**

**ARGUMENT** .......... **4**

I. The Plain Language of the Plan Warrants Dismissal of Natera's Complaint. .......... 4

(a) The Issue Before the Court Is Not "Notice and Surprise" but the Legal Effects of the Plain Language of a Mutual Reservation of Rights. .......... 5

(b) The Relief Requested by Natera Is Incompatible with the Plain Language of the Plan. .......... 6

II. Natera's Obligation to Remit the Milestone Payment Accrued Prepetition, and the Milestone Payment Dispute Ripened When Natera Submitted a Zero Dollar Calculation Postpetition. .......... 8

III. Invitae, as a Non-operational Debtor, Could Not Assume a Contract That Required Its Continued Performance. .......... 10

IV. Natera Erroneously Asks This Court to Limit the Power of a State Court Based on Federal Standing Principles .......... 11

**CONCLUSION** .......... **13**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ASARCO Inc. v. Kadish*,
490 U.S. 605 (1989) ........................................ 11

*Corhill Corp. v. S. D. Plants, Inc.*,
176 N.E.2d 37 (N.Y. 1961) ........................................ 6

*Donohue v. Cuomo*,
184 N.E.3d 860 (N.Y. 2022) ........................................ 8

*G–I Holdings, Inc. v. Ashland, Inc. (In re G-I Holdings Inc.)*,
No. 17-0077, 2017 WL 1788656 (D.N.J. May 5, 2017) ........................................ 8

*Karathansis v. THCR/LP Corp.*,
No. 06-1591 (RMB), 2007 WL 1234975 (D.N.J. Apr. 25, 2007) ........................................ 8

*Lauter v. Citgo Petroleum Corp.*
2018 WL 801601 (S.D. Tex. Feb. 8, 2018) ........................................ 11, 12

*Matter of M. Frenville Co., Inc.*,
744 F.2d 332 (3d Cir. 1984), *overruled in part by In re Grossman's Inc.*, 607 F.3d 114 (3d Cir. 2010) ........................................ 9, 10

*In re Mallinckrodt PLC*,
99 F.4th 617 (3d Cir. 2024) ........................................ 10

**Statutes**

11 U.S.C. § 365(g) ........................................ 2

Defendants Invitae Corporation ("Invitae") and its debtor affiliates (collectively, the "Debtors"), by and through their undersigned counsel, hereby submit this reply in support of their motion to dismiss the Verified Adversary Complaint filed by Plaintiff Natera, Inc. ("Natera") (together with the Debtors, the "Parties") on January 21, 2025 (the "Adversary Complaint").[2]

## INTRODUCTION

Natera received the benefit of its bargain when the APA closed on January 17, 2024, and Invitae delivered a healthcare service provider customer list and certain women's health genetic testing contracts to Natera. At closing, Invitae's right to the Milestone Payment accrued. After the Debtors filed their bankruptcy petition, Natera erroneously calculated the Milestone Payment as zero dollars, triggering a dispute governed by the APA. The Parties then negotiated the terms of the Reservation of Rights Provision in the Plan, which preserved the Parties' rights to pursue the Milestone Payment calculation dispute notwithstanding the Debtors' rejection of the APA. Natera admits that the purpose of the Reservation of Rights Provision was to allow the Plan to be confirmed "[i]n lieu of adjudicating the [dispute] during the Cases." Adversary Complaint ¶ 4. After the Plan was confirmed, Invitae filed the Delaware Action Complaint seeking declaratory relief on a solitary, narrow issue that required a legal determination of how the "Retention Accession Amount" is calculated, styled as "Count I (Declaratory Relief – Contract Interpretation). Delaware Action Complaint ¶ 33.

Now, however, Natera seeks to have its cake and eat it too. It wants the benefit of its bargain—Invitae's valuable customer list—without having to pay the full consideration it owes.

---

[2] All capitalized terms not defined herein have the same definitions as provided in the Debtors' Memorandum of Law in Support of Motion Dismiss Natera Inc.'s Adversary Complaint for Failure to State a Claim Upon Which Relief Can Be Granted. [ECF No. 08].

Accordingly, Natera asks this Court to ignore its own Order adopting the Plan and the clear and unambiguous Reservation of Rights Provision, which resulted from "the Parties agree[ment] to preserve their rights so that the plan could be confirmed." *See* Adversary Complaint ¶ 4. Natera now claims that the plain language of the Plan is inconsistent with 11 U.S.C. § 365(g). The opposite is true: there is no inconsistency between the Bankruptcy Code and the language of the Plan that expressly reserves the Milestone Payment calculation dispute, whether arising pre- or postpetition. To hold otherwise would require ignoring the plain language of Article IV.G and Schedule A(i) of the Plan. The Court should reject Natera's attempt to collect a windfall by creating a technicality where one simply does not exist.

Natera's tactic fails for two reasons. *First*, the plain language of the Plan and Plan Supplement expressly preserve the Debtors' ability to bring the Delaware Action notwithstanding their rejection of the APA. Indeed, the Plan documents provide that any and all causes action relating to the Milestone Payment, whether arising before or after the Petition Date are preserved, even if the APA is rejected. This language is dispositive. The Plan documents, including the Court's Confirmation Order, permit the Debtors, through the Plan Administrator, to pursue the Delaware Action. *Second*, the Debtors' right to the Milestone Payment vested before February 12, 2024 (the "Rejection Date"), even though the dispute they seek to resolve ripened after, and therefore, the dispute relates to a pre-petition right which, as Natera acknowledges, may be pursued.

Natera argues that this Court should ignore the language of the Plan, the Parties' intent to preserve their rights so that the Plan could be confirmed, and this Court's Order preserving the Milestone Payment calculation dispute because Invitae abandoned pursuit of its $22.5 million claim against Natera by rejecting the APA. It characterizes Invitae's rejection of the APA as a

"surprise [that] is interesting and likely strategic." ECF No. 12 ("Natera Response") ¶ 5. But it seems Natera is the party being strategic here, as it would be hard pressed to explain why either party would need to preserve their rights in anticipation of the assumption of the APA.

According to Natera, the Court should disregard the Parties' right to agree to the inclusion the Reservation of Rights Provision in the Plan, in favor of finding that the Debtors' rejection of the APA precludes them from pursuing the Milestone Payment. Natera contends, without support, that the Parties could not have agreed to a provision that is different than the customary treatment of the Bankruptcy Code. Not so. The Parties expressly preserved Invitae's rights against Natera, notwithstanding rejection of the APA. Thus, Natera's request for relief is an improper attempt to reform the Reservation of Rights Provision by inserting "pre-petition" before "Causes of Action.," where it did not exist. Natera had the opportunity to negotiate for such a qualifier before Confirmation. It did not. The Court should reject Natera's attempt to rewrite the language it negotiated.

Regardless, as Natera admits, Natera's argument only applies if the Milestone Payment dispute is deemed a post-petition cause of action. It is not. The Milestone Payment dispute is a continuation of Invitae's pre-petition vested rights under the APA. Under Third Circuit law, Invitae's right to the Milestone Payment accrued the moment the transaction closed—even if the calculation of the Milestone Payment could not occur until later.

At bottom, there are no facts that can support Natera's claim for relief because the plain language of the Plan expressly reserves *all* of Invitae's rights to its causes of actions, whether arising before or after the Petition Date, concerning the calculation of the Milestone Payment and notwithstanding rejection of the APA. The Court should deny Natera any opportunity to

strategically skirt its obligations and collect a windfall at the expense of the Debtors' creditors. Natera's Complaint should be dismissed; and the Delaware Action should proceed.

## ARGUMENT

### I. The Plain Language of the Plan Warrants Dismissal of Natera's Complaint.

Natera argues that it has pleaded sufficient facts to survive a motion to dismiss. But its Complaint seeks relief that directly contravenes Article IV.G of the Plan and would therefore require the Court to modify or ignore its Confirmation Order. Indeed, Article IV.G of the Plan expressly provides that the "Wind-Down Debtors and the Plan Administrator… shall retain and may enforce all rights to commence and pursue, as appropriate, ***any and all Causes of Action, whether arising before or after the Petition Date including any actions specifically enumerated in the Schedule of Retained Causes of Action*** . . . ." Amended Plan Supplement, at 9–10 (quoting Third Amended Plan, at 36–37). This retention of rights is reiterated within Article IV.G and Schedule A(i). Article IV.G states that the Debtors, the Wind-Down Debtors, or the Plan Administrator "reserve and shall retain such Causes of Action ***notwithstanding the rejection or repudiation of any Executory Contract*** or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan" and later states that the Debtors and the Wind-Down Debtors "expressly reserve ***all*** Causes of Action that are not expressly released or settled under the Plan… including ***all*** Causes of Action against the Entities identified in **Schedule A(i)**," which specifically sets forth the cause of action against Natera. *Id.* This provision makes clear that the APA may be rejected—that is, that Invitae may be deemed to have breached the APA pre-petition—and still expressly retains the Plan Administrator's right to "commence and pursue . . . any and all Causes of Action, ***whether arising before or after the Petition Date***." *Id.* Accordingly, and as explained in Debtors' Opening Brief, the Adversary Complaint must be dismissed.

In response, Natera attempts to avoid the only reasonable application of these provisions through a mischaracterization of the Debtors' arguments and the meritless argument that the Plan should be rewritten as a result the Debtors' rejection of the APA. These attempts fail.

**(a) The Issue Before the Court Is Not "Notice and Surprise" but the Legal Effects of the Plain Language of a Mutual Reservation of Rights.**

In its opposition, Natera attempts to mischaracterize the Debtors' arguments and claim that Natera's participation in the chapter 11 cases and notice of the Plan's provisions is irrelevant. But the issue before the Court is not whether Natera was on notice of the Reservation of Rights Provision. Rather, it is whether the Court should enforce a Plan provision reserving all causes of action, whether arising before or after the Petition Date and notwithstanding the rejection or repudiation of the APA, included in the Plan only after negotiation and agreement by two sophisticated parties to delay litigating the Milestone Payment calculation dispute until after the Plan was confirmed by the Court.

There is no dispute that Natera had knowledge of the Milestone Payment dispute and the Reservation of Rights Provision. "Natera never disputed what was contained in the Disclosure Statement or Confirmation Order, or what was described by Mr. Spirito on cross-examination." Natera Response ¶ 25. Although notice gave Natera an opportunity to object to the Reservation of Rights provision, Natera went a step further and was an architect in the drafting of the provision. *See* Adversary Complaint ¶¶ 4, 28-30. "In lieu of adjudicating the Motions during the Cases, the Parties agreed to preserve their rights so that the plan could be confirmed." Adversary Complaint ¶ 4.

Despite Natera's active participation in negotiating and presenting the Reservation of Rights Provision to the Court, it now seeks to avoid the effects of the Plan's clear and unambiguous reservation of "***all*** Causes of Action against the Entities identified in Schedule

A(i)," including the Milestone Payment calculation dispute that is the basis of the Delaware Action. Third Amended Plan, at 36–37. Brazenly, Natera's attempt comes after it has already reaped the benefit of the APA. The Court should not endorse this gamesmanship by permitting Natera to reap a windfall.

**(b) The Relief Requested by Natera Is Incompatible with the Plain Language of the Plan.**

As explained above and in the Debtors' Opening Brief, the Plan and Plan Supplement expressly preserve the Debtors' ability to pursue any and all causes of action against Natera relating to the Milestone Payment dispute notwithstanding the rejection of the APA. And yet Natera is now seeking to avoid the clear and unambiguous language contained in the Plan by asking the Court to rewrite the Plan in favor of its preferred outcome. Natera argues that the Plan documents can be harmonized because while Schedule A to the Plan Supplement preserves causes of action against Natera notwithstanding rejection, that preservation only applies to claims that accrued prior to the Debtors' breach (through rejection). Natera's attempted harmonization fails.

For starters, Natera's reading of the Plan Supplement would render Schedule A entirely superfluous. As Natera concedes, "to the extent a cause of action existed based on Natera's performance before the Debtors' breach, rejection has no effect on such claims." Natera Response ¶ 28. Given this, if, as Natera contends, all Schedule A does is preserve pre-rejection causes of action, then there would have been no Schedule A at all as those claims are inherently preserved and unaffected by rejection. That violates a fundamental tenet of contract interpretation. *See, e.g.*, *Corhill Corp. v. S. D. Plants, Inc.*, 176 N.E.2d 37, 38 (N.Y. 1961) (emphasizing that courts may not interpret contracts so as to render provisions "entirely meaningless" because it is a "cardinal rule of construction that a court should not adopt an

interpretation which will leave a provision of a contract without force and effect") (internal quotation marks and citations omitted). Schedule A must be interpreted to afford it meaning and the plain words of Schedule A preserve all claims and causes of action against Natera notwithstanding rejection.

Likewise, the Court cannot—without obviating phrases contained within Article IV.G—grant Natera's requested relief and at the same time honor the language of Article IV.G. Article IV.G retains the Debtors' right to commence and pursue causes of action, ***whether arising before or after the Petition Date***, notwithstanding the rejection of any executory contract, and it expressly preserves the causes of action under Schedule A(i), including the Milestone Payment calculation dispute. Natera's opposition entirely (and conveniently) ignores the phrase, "whether arising before or after the Petition Date." *See* Natera Response ¶ 28. That phrase is dispositive. Recognizing that the Milestone Payment dispute might be considered a post-petition cause of action, the Debtors—after negotiating with Natera to delay adjudicating the matter—removed all doubt by drafting clear and unambiguous language that preserved the Debtors' right to pursue this cause of action whether it was considered to be arising before or after the Petition Date and notwithstanding rejection of the APA. Natera's requested relief runs directly afoul of the Plan's plain language.

And any operation of law that Natera seeks to impose on the language of the Plan only works if Natera is allowed to erase from the Plan the Debtors' retention of post-petition causes of action. Even that result requires the Court to first conclude that the Milestone Payment calculation dispute is not a continuation of a vested, pre-petition (but contingent) right (which it is, as discussed below). But courts interpret confirmed plans under contract law principles, and "[t]he fundamental, neutral precept of contract interpretation is that agreements are construed in

accord with the Parties' intent[,] and the best evidence of what parties to a written agreement intend is what they say in their writing." *Donohue v. Cuomo*, 184 N.E.3d 860, 866 (N.Y. 2022) (internal quotation marks and citation omitted). Natera provides no law to negate this fundamental principle but instead draws immaterial factual distinctions between the instant matter and cases like *Karathansis v. THCR/LP Corp.*, No. 06-1591 (RMB), 2007 WL 1234975 (D.N.J. Apr. 25, 2007) and *G–I Holdings, Inc. v. Ashland, Inc. (In re G-I Holdings Inc.)*, No. 17-0077, 2017 WL 1788656 (D.N.J. May 5, 2017), which nonetheless apply contract interpretation principles to the interpretation of confirmed plans. In this case, the Plan documents clearly preserved the Debtors' right to resolve the disputes with Natera over the calculation of the Milestone Payment notwithstanding the rejection of the APA. Natera's attempt to avoid a determination of its payment obligations to the Debtors is contrary to the Parties' agreement and the express provisions of the Plan and Confirmation Order.

## II. Natera's Obligation to Remit the Milestone Payment Accrued Prepetition, and the Milestone Payment Dispute Ripened When Natera Submitted a Zero Dollar Calculation Postpetition.

When the Parties closed on the APA, Natera's obligation accrued with respect to its performance of the Milestone Payment provision, and Invitae's right to receive the payment vested. While the amount of the Milestone Payment was not yet calculable, Natera's obligation to make the Milestone Payment (assuming it was greater than zero dollars) accrued the moment it executed the APA. Yet, Natera would have the Court believe that Invitae had no vested right because the Debtors' First Disclosure Statement reported the "*potential* [to receive] cash milestone payments." Natera is wrong. The potential for the cash milestone payment had nothing to do with a right contingent on performance but simply recognized that the payment amount could be calculated at zero dollars, even if Invitae anticipated otherwise.

The APA accounted for the potential that the ***calculation*** of the Milestone Payment could be "subject to dispute and reconciliation" (through its independent auditor provision), Second Disclosure Statement, at 34; *accord id.*, at 36 n.11, 101–102, but there can be no dispute that Invitae became entitled to the right to receive the Milestone Payment upon delivery of the customer list and other assets at closing. The Milestone Payment merely depended, "at least in part, on data to be collected and analyzed," in Natera's regular course, to determine a "Volume Retention Percentage." *See* Adversary Complaint ¶¶ 1–3, 21–24. Natera does not dispute that the Milestone Payment was part of the consideration it owed in exchange for Invitae's prepetition delivery of certain assets upon closing. Instead, Natera argues that the APA's rejection excused its obligation to remit the Milestone Payment, even though Invitae performed its end of the deal before the Rejection Date. Not true.

*Frenville*, despite Natera's framing, provides guidance relevant to the analysis and illustrates why Invitae's right to payment vested prepetition and how the dispute concerning the calculation of the Milestone Payment is properly said to have arisen prepetition. By its own admission, Natera recognizes that *Frenville* finds there is a right to payment in "circumstances such as indemnity and surety agreements," but Natera misconstrues the *Frenville* court's discussion by limiting it to "special circumstances." Natera Response ¶ 33. *Frenville* concerned an action for indemnity and contribution at New York common law and whether the automatic stay applied "when the debtor's acts which form the basis of a suit occurred pre-petition but the actual cause of action which is being instituted did not arise until after the filing of a bankruptcy petition." *Matter of M. Frenville Co., Inc.*, 744 F.2d 332, 334 (3d Cir. 1984), *overruled in part by In re Grossman's Inc.*, 607 F.3d 114 (3d Cir. 2010). Unlike contractual indemnity, the *Frenville* court concluded that common law indemnity cannot be deemed to give rise to a prepetition claim

when the dispute arises post-petition. *Id.* at 336–37. But the *Frenville* court considered indemnity or surety agreements as the "***classic case*** of a contingent right to payment under the Code," not the only or special case. *Id.* at 337. It follows that where a contingent right to payment exists, "the right to payment exists as of the signing of the agreement, but it is dependent on the occurrence of a future event." *Id.* Under these circumstances, the postpetition dispute can be deemed to have arisen prepetition. There can be no dispute that here the Milestone Payment was contingent on the occurrence of a future event—deferred calculation of the Volume Retention Percentage base on collected data–independent of Invitae's or Natera's performance. *See also In re Mallinckrodt PLC*, 99 F.4th 617, 620-21 (3d Cir. 2024) (finding that where a seller sold a drug to the debtor for a lump sum and future royalties, the right to royalty payments arose prepetition at the time the contract was signed, even though the debtor's obligation to pay royalties was contingent on sales data because a "claim can *arise* before it is *triggered*," which is a "general rule" that only a "few contract claims may not fit") (emphasis in original). Thus, the Reservation of Rights Provision preserved Invitae's pre-petition rights with respect to its entitlement to the Milestone Payment.

## III. Invitae, as a Non-operational Debtor, Could Not Assume a Contract That Required Its Continued Performance.

Natera posits that non-operational liquidating debtors may assume executory contracts despite ceasing operations, while ignoring the non-operational distinction and any differences between its purported list of analogous liquidating chapter 11 cases and the Debtors' cases. *Compare* Natera Response ¶ 38 *with* Natera Response ¶ 39. Natera makes no attempt to distinguish its table of "Liquidating Debtors" as operational versus non-operational. Nor does it provide any factual similarities that would rebut the Debtors' business judgment in this case to reject all executory contracts at Confirmation. *Id.* It instead summarily tabled four cases and

asked the Court to trust these cases were sufficiently similar to this non-operational case, to second guess Invitae's business judgment. Natera further states that Invitae chose to reject the APA instead of assuming and curing defaults, yet points to no unsecured claims filed for damages resulting from the Debtors' rejection of the APA. Invitae rejected the APA with the Reservation of Rights Provision in mind. It would have been inconsistent with Invitae's duty to maximize recoveries for its creditors, and inconsistent with the intent of the Bankruptcy Code, for it to have assumed the executory contract at issue here, given the Reservation of Rights negotiated between the parties, incorporated into the Plan, and adopted by the Court in its Confirmation Order.

## IV. Natera Erroneously Asks This Court to Limit the Power of a State Court Based on Federal Standing Principles.

Finally, Natera argues that the Court should find that the Plan Administrator lacks standing to pursue the Delaware Action as a result of the rejection of the APA. Natera's argument is both procedurally improper and legally unsupported by cases applying standing with respect to federal bankruptcy law.

As a gating issue, in state court actions, standing is determined by state law, not federal principles of justiciability. *E.g.*, *ASARCO Inc. v. Kadish*, 490 U.S. 605, 617 (1989) (recognizing that "the constraints of Article III do not apply to state courts, and accordingly the state courts are not bound by the limitations of a case or controversy or other federal rules of justiciability"). Natera's standing argument is thus wholly misplaced and seeks to have this Court determine issues that are outside of the scope of this proceeding.

In any event, Natera's reliance solely on *Lauter v. Citgo Petroleum Corp.* has no bearing on the Delaware Action. *Lauter* applied Fifth Circuit bankruptcy standing principles to a complaint alleging breach of contract and violations of the automatic stay that was filed in the

District Court for the Southern District of Texas. First, the court recognized that "standing is a jurisdictional requirement" that "implicates the court's subject-matter jurisdiction." *Lauter v. Citgo Petroleum Corp.* 2018 WL 801601, at *4 (S.D. Tex. Feb. 8, 2018) (citations omitted). The Delaware Action was not brought before this Court, and jurisdictional issues with respect to that action are reserved for the Delaware court. Further, the parties in *Lauter* were not disputing whether the causes of action occurred pre-petition, contrary to Invitae's assertions here. *See id.* at *13. Most importantly, however, *Lauter* did not concern an express agreement to preserve post-petition disputes adopted by the Plan and the Court's Confirmation Order. Dicta provided by the *Lauter* court precisely highlights the unfairness of permitting Natera to bypass the Reservation of Rights Provision in this case:

> Before the Citgo Agreement was rejected, remedies for the breaches about which the plaintiff complains were thus available to Gas-Mart from the bankruptcy court in the form of orders for specific performance or violation of the automatic stay. But to the extent that Citgo's alleged breaches violated the automatic stay, for the reasons stated in § II.B.1.(b)(3), above, the court has already concluded that plaintiff lacks standing to pursue this claim ***because the ability to do so was not preserved in the plan documents***.

*Id.* at *15 (emphasis added). Knowing Invitae had remedies available to it before rejecting the APA, the Parties agreed to preserve Invitae's right to resolve the Milestone Payment dispute so that the Plan could be confirmed. That reservation was most relevant in the context of rejection because assumption would have simply returned the Parties to status quo ante. After granting Invitae the right to pursue remedies post-confirmation, effectively ensuring Invitae that it had no need to act pre-rejection, Natera now seeks to strip Invitae of that right by modifying the language of the confirmed Plan. The Court should disregard Natera's standing argument given its lack of relevance to the issues properly before the Court.

## CONCLUSION

For the foregoing reasons, the Adversary Complaint fails to state a claim upon which relief can be granted, and the Adversary Complaint should be dismissed with prejudice.

Dated: May 27, 2025

By: */s/ Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Daniel J. Harris, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email: msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
dharris@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Nicole L. Greenblatt, P.C. (admitted *pro hac vice*)
Jeffrey Goldfine (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: nicole.greenblatt@kirkland.com
jeffrey.goldfine@kirkland.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
William E. Arnault, P.C. (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: william.arnault@kirkland.com

*Co-Counsel to the Plan Administrator and Wind-Down Debtors*