**GIBBONS P.C.**
Robert K. Malone
Kyle P. McEvilly
One Gateway Center
Newark, New Jersey 07102-5310
Telephone: (973) 596-4500
Email: rmalone@gibbonslaw.com
kmcevilly@gibbonslaw.com

-and-

**MCDERMOTT WILL & EMERY LLP**
Darren Azman (admitted *pro hac vice*)
Lisa A. Gerson (admitted *pro hac vice*)
Deanna D. Boll (NJ Bar No. 31861998)
One Vanderbilt Avenue
New York, New York 10017-3852
Telephone: (212) 547-5400
Email: dazman@mwe.com
lgerson@mwe.com
dboll@mwe.com

*Co-Counsel to Natera Inc.*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>INVITAE CORPORATION, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-11362 (MBK)<br><br>(Jointly Administered) |
| NATERA INC.,<br><br>Plaintiff,<br><br>v.<br><br>INVITAE CORPORATION, *et al.*,<br><br>Defendant. | Adv. Pro. No. 25-01015 (MBK) |

[1] The last four digits of Debtor Invitae Corporation's tax identification number are 1898. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at www.kccllc.net/invitae. The Debtors' service address in these chapter 11 cases is 1400 16th Street, San Francisco, California 94103.

**NATERA'S SUR-REPLY TO DEBTORS' MOTION TO DISMISS**

Plaintiff, Natera Inc. ("Natera" or "Plaintiff"), hereby submits this sur-reply in opposition to the *Debtors' Memorandum of Law in Support of Motion to Dismiss Natera Inc.'s Adversary Complaint for Failure to State a Claim Upon Which Relief Can Be Granted* [Adv. Dkt. No. 8] (the "Motion to Dismiss") and the *Debtors' Reply In Support of Motion to Dismiss* [Adv. Dkt. No. 13] ("Debtors' Reply") filed by Debtor Invitae Corporation ("Invitae" or "Defendant" and, together with the above-captioned debtors and debtors-in-possession, the "Debtors"), seeking to dismiss the *Verified Adversary Complaint* [Adv. Dkt. No. 1] (the "Complaint").[2]

**INTRODUCTION**

1. This is a Motion to Dismiss a Complaint seeking declaratory and injunctive relief, for which the elements of the causes of action have been pled. Invitae does not argue otherwise, and its alternative arguments are premature, as they will be addressed through discovery and subsequent briefing. In any event, Invitae's arguments are also wrong.

2. The "plain language of the Plan" argument that permeates the Debtors' Reply stands for the proposition that the Plan can ignore certain provisions of the Bankruptcy Code when it suits the Debtors. This allows Invitae, not Natera, to "have its cake and eat it too"[3] by cherry-picking parts of the APA that it likes and requiring continued performance obligations by Natera while rejecting the APA *in toto*. The Debtors simply cannot force a non-breaching party to continue to perform under a contract after a debtor's breach. This is not permissible under contract and bankruptcy law "101". Indeed, it is unlikely any federal court would have condoned interpretation of a plan whereby a debtor would receive all of the benefits of a contract as if it were

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Complaint and Natera's Response to Defendant's Motion to Dismiss, filed on May 20, 2025 [Adv. Dkt. No. 12] ("Natera's Opposition Brief").

[3] Debtors' Reply at 1.

assumed, when it instead was rejected. Therefore, the only permissible reading of the Debtors' Plan is the one that has been articulated by Natera – that Schedules A and C in the Debtors' Plan Supplement can be harmonious without being contrary to the Bankruptcy Code. Any suggestion to the contrary – *i.e.*, that the Plan could ignore and otherwise violate the principles of contract rejection law – would have rendered the Plan unconfirmable. Instead, Section 365(g) necessarily narrows the scope of causes of action that the Debtors retained with respect to rejected contracts like the APA.

3. In addition, the Plan Administrator does not have standing to pursue claims unless they are property of the estate, and rejection, by operation of law, excludes post-petition claims from the estate. The Third Circuit has made it clear that rejected contracts cease to be part of a debtor's estate. This is consistent with executory contract interpretation by legal scholars, and this is why other courts have found trustees lack standing to bring post-rejection breach claims even where plan documents are "specific and unequivocal" in identifying retained causes of action. This is rarely at issue because most debtors comply with Section 365(g) of the Bankruptcy Code. These Debtors have not. They want the benefits of the contract without the burdens, which is not allowed under the Bankruptcy Code. There is rejection and then there is assumption, not a combination of both. Once a contract is rejected, it is no longer property of the estate.

4. Finally, the contingent obligations here depend on a variety of factors and are not vested. This is not a contract in which vesting occurs by operation of law like indemnity or surety agreements. The contract here is an asset purchase agreement. It called for millions of dollars to be paid on the date of contract, which was paid, and then it called for separate performance-based events to occur months into the operation of the contract (and months into the Chapter 11 Cases) in order for the Debtors to qualify for potential additional payments. These were not guaranteed deferred payments. Any potential additional payments depended upon different performance obligations, and once the Debtors breached, Natera's continuing performance obligations ceased.

5. Accordingly, as further explained below, Debtors' Motion to Dismiss should be denied.

**ARGUMENT**

**I. The Plain Language of the Plan Cannot Contradict the Bankruptcy Code and Create Rights That Do Not Exist.**

6. Invitae's "plain language of the Plan" argument is that the Plan "reserves all of Invitae's rights to its causes of action . . . notwithstanding rejection of the APA." Debtors' Reply at 3 (emphasis in original). Its "rights," however, have to be informed and limited by Section 365(g); otherwise, the legal distinctions between rejection and assumption under the Code would vanish. *Sharon Steel Corp. v Nat'l Fuel Gas Distribution Corp.*, 872 F.2d 36, 40 (3d Cir. 1989) ("a debtor may not reject a contract but maintain its benefits").

7. As addressed previously, the Debtors could retain causes of action "notwithstanding rejection," that would ordinarily survive a contract breach. Natera Opposition Brief at ¶¶ 27-30; *see also Mission Product Holdings, Inc. v Tempnology, LLC*, 587 U.S. 370, 372 (2019) (same). This is not the same thing, however, as compelling specific performance by a non-breaching party, which is what the Debtors are seeking to do here. There is nothing unique about the APA that would change this result. The APA is governed by Delaware law which excuses performance if the other party is in material breach. *BioLife Solutions, Inc. v. Endocare, Inc.,* 838 A.2d 268, 278 (Del. Ch. 2003); *see also In re Exide Technologies*, 607 F.3d 957, 962 (3d Cir. 2010) (the failure of either party to complete performance of an executory contract constitutes a material breach excusing the performance of the other).

8. What might survive the Debtors' breach would be claims and causes of action for *pre-petition* breaches of the contract by Natera (none occurred or are even alleged here), but that is not what Invitae is seeking to do in the Chancery Court Action. In the Chancery Court Action, Invitae is seeking to pretend rejection and the Debtors' contract breach under Section 365(g) never happened. This cannot be countenanced. Rejection has material consequences; it is not merely a

procedural technicality. Invitae cannot simultaneously shed its obligations through rejection and demand the benefits (*e.g.*, the Milestone Payment) as if the contract were assumed.

**II. A Plan Administrator Cannot Bring Estate Claims That Do Not Exist.**

9. Invitae's assertion that the Plan Administrator has standing to bring these claims against Natera lacks merit. In *Matter of Taylor*, the Third Circuit held that not only is it the trustee's decision to assume or reject its contracts, but the choice "determines whether the benefits of an executory contract will or will not become property of the estate." 913 F.2d 102, 107 (3d Cir. 1990). Legal scholars have agreed, noting that "[u]nlike ordinary assets, executory contracts do not automatically enter the estate." Jesse M. Fried, *Executory Contracts and Performance Decisions in Bankruptcy*, 46 DUKE L. REV. 517, 519 (1996).

10. Specifically retaining the causes of action in the Plan does not change this result. Very similar facts were involved in the *Citgo Petroleum* case, and while it is a case from the Southern District of Texas, the court's analysis is instructive. In *Citgo Petroleum*, the court held that the plan documents were "specific and unequivocal" to preserve the right to pursue breach of contract claims against Citgo because the plan provided that all causes of action would be transferred to and vest in the creditor trust, and Citgo was specifically identified on an exhibit. *Lauter v. Citgo Petroleum Corp.*, Civ. A. No. H-17-2028, 2018 WL 801601 at *10 (S.D. Tex. Feb. 8, 2018). However, ***that was not the end of the inquiry***. Notwithstanding the specificity in the plan documents regarding Citgo and retained causes of action against Citgo, the court concluded that the rejection of the agreement with Citgo "means that the plaintiff lacks standing to pursue the contract claims asserted in this action for post-petition breaches." *Id.* at *13.

> ***[R]ejection of the [contract] not only relieved the estate of its post-petition performance obligations, but also relieved the estate of its ability to assert claims for post-petition breaches thereof.*** Moreover, pursuant to §365(f) executory contracts must be assumed by the debtor before they can be assigned. . . ***rejection of the [contract] therefore precluded the post-petition breaches from***

> ***becoming assets of [the] estate that could be assigned and transferred to the creditors trust.***

*Id.* at *15 (emphasis added). The court, therefore, concluded that the trustee of the creditor trust lacked standing to pursue the breach of contract claim that was otherwise specifically listed as a retained cause of action in the debtor's plan. *Id.* This is precisely the situation before this Court – Invitae listed the Natera retained causes of action related to potential post-petition breaches, but it thereafter rejected the contract, thereby removing such causes of action from the estate and leaving nothing for the Debtors to assign to the Plan Administrator except potential pre-petition claims. Invitae's attempt to distinguish *Citgo Petroleum* is unavailing and it missed this two-part process. The court agreed that the plan was specific to preserve the Citgo breach of contract claim, but the rejection changed the scope of what could be retained. Invitae's discussion of a second claim – a claim for violating the automatic stay – had no bearing on the court's analysis of the effect of rejection of a contract. *See* Debtors' Reply at 12.[4]

## III. The Milestone Payment Had Not Vested & Matters Related to Vesting Are Improper for the Motion to Dismiss in Any Event.

11. The Milestone Payment was explicitly contingent on future performance, such as post-closing retention and specific retention percentage data measured post-closing. The right to a contingent payment did not vest because the underlying conditions for performance were never fulfilled due to the Debtors' breach.

12. Invitae relies on *Frenville,* but *Frenville* did not even involve rejection of an executory contract. Debtors' Reply at 9-10 (citing *Matter of M. Frenville Co., Inc.*, 744 F.2d 332 (3d Cir. 1984*), overruled in part by In re Grossman's Inc.*, 607 F.3d 114 (3d Cir. 2010)). *Frenville*

---

[4] Debtors' suggestion that Natera's standing argument is procedurally improper (*id.* at 11) is nonsensical. First, this *Bankruptcy Court* is exactly the right court to decide the implications of rejection and whether a contract that was not assumed could nonetheless have been assigned to the Plan Administrator. Second, this Court is perfectly capable of applying Delaware law, which in any event, is not substantially different than federal law on standing. *See, e.g., O'Neill v. Town of Middletown*, Civ. A. No. 1069-N, 2006 WL 205071, at *28 & n.251 (Del. Ch. Jan. 18, 2006) ("Delaware has traditionally recognized the federal test for standing[.]").

involved an analysis of a right to payment for purposes of whether the automatic stay would apply to certain claims. *Id.* at 336-37. The Frenville Court was not asked to analyze any issues involving what happens to future obligations of the parties after a Section 365(g) debtor breach. The same can be said of *In re Mallinckrodt Plc*, 99 F.4th 617 (3d Cir. 2024), which involved whether a debtor's perpetual annual royalty obligations could be discharged in bankruptcy. Like *Frenville, Mallinckrodt* has nothing to do with executory contracts, and, therefore, it does not involve a situation where a debtor's contract rejection would naturally cut off future obligations of a non-breaching party.

13. In fact, the Debtors cited no cases that support their unsubstantiated vested rights argument. And, contrary to the Debtors' wordplay suggesting the milestone payment dispute "ripened" when Natera submitted its postpetition payment calculation (Debtors' Reply at 8), no claims "ripened," because the calculations Natera made were no longer contractually required.[5]

14. In any event, for the purposes of the Motion to Dismiss, Invitae's arguments about vesting are inappropriate. If there needs to be additional briefing or discovery on the issue of vesting, the Court can order the same, but the Motion to Dismiss is not the proper place for these arguments.

15. The Complaint is proper.[6] Invitae has not even disputed that declaratory and injunctive relief sought by Natera is appropriate.

[5] While, ultimately, Natera was not required to make the Milestone Payment calculations due to Invitae's breach, it had already done so while it awaited the Debtors' decision on assumption or rejection. That does not mean that the Debtors have a claim to enforce payment or compel Natera to undergo its post-petition performance a second time.

[6] The Complaint properly presents an actual legal controversy of sufficient immediacy to warrant judicial relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, which will resolve uncertainty created by the continuation of the Chancery Court Action without giving effect to Section 365(g) and the rejection of the APA. The Complaint also properly seeks injunctive relief to prevent enforcement of the APA without giving effect to Section 365(g).

## CONCLUSION

**WHEREFORE**, by reason of the foregoing, Plaintiff Natera Inc. respectfully requests that Defendant's Motion to Dismiss be denied.

Dated: June 2, 2025

Respectfully submitted,

By: */s/ Robert K. Malone*

**GIBBONS P.C.**
Robert K. Malone
Kyle P. McEvilly
One Gateway Center
Newark, New Jersey 07102-5310
Telephone: (973) 596-4500
Email: rmalone@gibbonslaw.com
kmcevilly@gibbonslaw.com

-and-

**MCDERMOTT WILL & EMERY LLP**
Darren Azman (admitted *pro hac vice*)
Lisa A. Gerson (*pro hac vice* forthcoming)
Deanna D. Boll
One Vanderbilt Avenue
New York, New York 10017-3852
Telephone: (212) 547-5400
Email: dazman@mwe.com
lgerson@mwe.com
dboll@mwe.com

*Co-Counsel to Natera Inc.*