**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>INVITAE CORPORATION et al.,<br><br>Debtors. | Bankruptcy Action No. 24-11362 (MBK)<br><br>Adversary Proceeding No. 25-1015 (MBK) |
| NATERA INC.,<br><br>Appellant,<br><br>v.<br><br>INVITAE CORPORATION,<br><br>Appellee. | Civil Action No. 25-13394 (RK)<br><br>**OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon Appellant Natera Inc.'s ("Appellant" or "Natera") appeal from the United States Bankruptcy Court for the District of New Jersey's ("Bankruptcy Court") "Order Dismissing Adversary Proceeding Without Prejudice" ("Bankr. Order," AP ECF No. 19; *see also* "Bankr. Op.," AP ECF No. 18).[1] (ECF No. 1; "Natera Br.," ECF No. 5.) Invitae Corporation (together with its debtor affiliates, "Appellee," "Debtor," or "Invitae") filed a brief in opposition. ("Opp. Br.," ECF No. 10.) Natera replied. ("Reply Br.," ECF No. 18.) The Court has considered the parties' submissions and resolves the appeal without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. *See also* L. Civ. R.

[1] References to "ECF No. __" refer to documents filed in the present appeal. References to "AP ECF No. __" refer to documents filed in the adversary proceeding, *Natera Inc. v. Invitae Corp.* (*In re Invitae Corp.*), No. 25-1015 (Bankr. D.N.J.).

601.1(c) (providing that the District's Local Civil Rules apply to bankruptcy appeals before the District Court). After carefully considering the parties' submissions and, for the reasons explained below, the Bankruptcy Court's Order is **AFFIRMED**.

## I. BACKGROUND

The factual and procedural background of this matter are well known to the parties and recited in the Opinion of the Honorable Michael B. Kaplan, U.S.B.J., former Chief Judge of the Bankruptcy Court.[2] (*See* Bankr. Op. at 2–4.) The parties do not dispute the facts as stated in the Bankruptcy Court's Opinion, so the Court primarily restates the facts from that Opinion. *See Fin. Cas. & Sur. Co. v. Thayer*, 559 B.R. 102, 105 (D.N.J. 2016).

Prior to filing for bankruptcy, Invitae entered into an Asset Purchase Agreement ("APA") with Natera. (Bankr. Op. at 2.) Pursuant to the APA, Invitae agreed to sell certain assets related to digital health solutions and health data services to Natera in exchange for $10 million and a potential future "Milestone Payment" to be calculated after the closing date of the APA.[3] (*Id.*; AX 6, at A-261.)[4]

On February 13, 2024, about a month after the execution of the APA, Invitae filed for bankruptcy under chapter 11. (Bankr. Op. at 2; AX 8.) The parties agree the APA had not been fully performed.[5] (Natera Br. at 5 n.6; Opp. Br. at 6.) Indeed, they acknowledged throughout the

---

[2] For additional factual background, see *Official Committee of Unsecured Creditors v. Invitae Corp.* (*In re Invitae Corp.*), No. 24-8550, 2025 WL 2538952, at *1–7 (D.N.J Aug. 11, 2025).

[3] The Court does not take a position as to the parties' dispute regarding the "contingent nature of the Milestone Payment." (Bankr. Op. at 2.)

[4] The record designated by Natera is accessible at ECF Nos. 6-1 through 6-20 and 7-1 and 7-2. Like the parties, the Court cites to the record using "AX ___" to refer to exhibits and "A-___" to refer to specific pages.

[5] It is relevant that the parties had outstanding obligations under the APA. As the Supreme Court of the United States has explained, "Section 365 of the Bankruptcy Code enables a debtor to 'reject any executory contract'—meaning a contract that neither party has finished performing." *Mission Prod. Holdings, Inc. v.*

bankruptcy proceeding that Invitae could be entitled to receive the Milestone Payment. (Bankr. Op. at 2.) Natera sought relief from the automatic stay in order to initiate a declaratory judgment action against Invitae to resolve a dispute related to the Milestone Payment. (*Id.* at 3; AX 11.) After settlement negotiations, language was added to the proposed Confirmation Order reserving Natera's rights to seek adjudication before a Delaware state court of any contract interpretation issues regarding the APA, including regarding Natera's obligation to make the Milestone Payment. (Bankr. Op. at 3.) Invitae twice amended the Bankruptcy Plan and circulated supplemental plan documents reserving its rights to bring actions related to contract disputes, even if the relevant underlying contracts were rejected. (*Id.*) Natera did not object. (*Id.*) The Bankruptcy Court confirmed Invitae's Third Amended Plan on August 2, 2024. (*Id.*; AX 4.) The Bankruptcy Plan became effective and was substantially consummated on August 7, 2024. (Bankr. Op. at 4; AX 15.) Invitae rejected the APA on that same day.[6] (Bankr. Op. at 4.)

On December 11, 2024, the Plan Administrator initiated an action in the Delaware Court of Chancery (the "Delaware Action") requesting a declaratory judgment interpreting the APA as it relates to the Milestone Payment. (*Id.*) On January 21, 2025, Natera initiated, in the Bankruptcy Court, an adversary proceeding against Invitae (the "Adversary Proceeding") seeking a declaration that Invitae's rejection of the APA relieved Natera of any obligation thereunder and an injunction barring the Delaware Action. (*Id.*; AX 5.) Invitae moved to dismiss the Adversary Complaint. (Bankr. Op. at 1; AX 17.) The Bankruptcy Court denied the motion. (Bankr. Op. at 15.)

---

*Tempnology, LLC*, 587 U.S. 370, 372 (2019) (quoting 11 U.S.C. § 365(a)). The APA was identified as a rejected contract in the Bankruptcy Plan, as explained below. (Bankr. Op. at 4.)

[6] Under Section 365, a debtor "may assume or reject any executory contract." *Mission Prod. Holdings, Inc.*, 587 U.S. at 373 (quoting 11 U.S.C. § 365(a)). "[T]he rejection of an executory contract constitutes a breach of such contract." *Id.* at 374 (cleaned up) (quoting 11 U.S.C. § 365(g)).

Nonetheless, the Bankruptcy Court dismissed the Adversary Complaint because it *sua sponte* declined to exercise jurisdiction. (*Id.*; Bankr. Order.)

Natera appealed to this Court. (ECF No. 1.) The appeal has been fully briefed and is ripe for decision.

## II. <u>LEGAL STANDARD</u>

A district court has appellate jurisdiction over the final judgments, orders, and decrees of a bankruptcy court. 28 U.S.C. § 158(a)(1). "Within the Third Circuit, district courts have taken the view that permissive abstention is a final order . . . ." *Wright v. Trystone Cap. Assets, LLC*, No. 20-15017, 2021 WL 3561218, at *2 (D.N.J. Aug. 12, 2021). A district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." *Ins. Co. of N. Am. v. Cohn* (*In re Cohn*), 54 F.3d 1108, 1113 (3d Cir. 1995) (quoting former Fed. R. Bankr. P. 8013 (amended 2014)); *see also W. Milford Shopping Plaza, LLC v. Great Atl. & Pac. Tea Co.* (*In re Great Atl. & Pac. Tea Co.*), No. 14-4170, 2015 WL 6395967, at *2 n.1 (S.D.N.Y. Oct. 21, 2015) (explaining that, although this language was removed from Federal Rule of Bankruptcy Procedure 8013 via amendment, "logic still compels the same conclusion with respect to the appellate powers of the District Court"). The standard of review for bankruptcy court decisions "is determined by the nature of the issues presented on appeal." *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147, 157 (D.N.J. 2005). A bankruptcy court's factual findings are reviewed for clear error, and legal conclusions are subject to plenary review. *See In re Congoleum Corp.*, 149 F.4th 318, 327 (3d Cir. 2025).

Issues within a bankruptcy court's "equitable discretion" are reviewed for abuse of discretion. *In re Hechinger Inv. Co. of Del.*, No. 99-2261, 2001 WL 34368282, at *6 (D.N.J. Mar. 21, 2001) (citing *In re Cont'l Airlines*, 91 F.3d 553, 560 (3d Cir. 1996) (en banc)). This includes a

bankruptcy court's decision to permissively abstain. *See Wright*, 2021 WL 3561218, at *2, *4 (citing *Interface Grp.-Nev., Inc. v. Trans World Airlines, Inc.* (*In re Trans World Airlines*), *Inc.*, 145 F.3d 124, 131 (3d Cir. 1998)); *G-I Holdings Inc. v. Ashland Inc.* (*In re G-I Holdings Inc.*), No. 17-77, 2017 WL 1788656, at *12–15 (D.N.J. May 5, 2017).

The abuse of discretion "standard is 'at root a deferential standard of review,' and the district court 'should not disturb an exercise of discretion unless there is a definite and firm conviction that the [bankruptcy] court . . . committed clear error of judgment in the conclusion it reached upon weighing the relevant factors.'" *Armenia Coffee Corp. v. Meisel* (*In re Hudson's Coffee, Inc.*), No. 08-5133, 2009 WL 1795833, at *2 (D.N.J June 22, 2009) (alterations in original) (quoting *Will v. Nw. Univ.* (*In re Nutraquest, Inc.*), 434 F.3d 639, 645 (3d Cir. 2006)). "As such, a bankruptcy court abuses its discretion only if no reasonable person could take the view it adopted . . . ." *Ayar v. Atkinson* (*In re Cortuk*), No. 22-1690, 2022 WL 17361623, at *1 (D.N.J. Dec. 1, 2022) (cleaned up). The appellant bears the burden of showing an abuse of discretion. *Steven A. Conner, DPM, P.C. v. Fox Rehab. Servs., P.C.*, Nos. 23-1550, 23-1684, 2025 WL 289230, at *14 n.151 (3d Cir. Jan. 24, 2025) (citing *Titus v. Mercedes Benz of N. Am.*, 695 F.2d 746, 751 (3d Cir. 1982)).

## III. DISCUSSION

On appeal, Natera challenges the Bankruptcy Court's failure to provide notice and an opportunity to be heard before abstaining, the decision to abstain, and the application of the doctrine of quasi estoppel. These challenges fail.

### A. The Lack of Notice

The Bankruptcy Court *sua sponte* elected to abstain in the Adversary Proceeding. (Bankr. Op. at 15.) Natera agrees that permissive abstention can be raised *sua sponte* by the Bankruptcy

Court. (Natera Br. at 15 (citing *LaRoche Indus., Inc. v. Orica Nitrogen LLC* (*In re LaRoche Indus., Inc.*), 312 B.R. 249, 256 (Bankr. D. Del. 2004)).) Natera, however, argues that the Bankruptcy Court abused its discretion in abstaining "without first giving the parties an opportunity to be heard." (*Id.*)

As Natera points out, some courts outside this District and Circuit have required bankruptcy courts to give the parties an opportunity to be heard before abstaining. (*See id.*); *Stabler v. Beyers* (*In re Stabler*), 418 B.R. 764, 769 (B.A.P. 8th Cir. 2009); *Sears v. Sears* (*In re AFY, Inc.*), 539 B.R. 373, 378 (D. Neb. 2015); *PRN Pharm. Servs., LP v. Brownsburg Healthcare LLC* (*In re Kentuckiana Healthcare, LLC*), No. 12-705, 2014 WL 906121, at *3 (W.D. Ky. Mar. 7, 2014); *Vernell v. Wash. Mutual Bank, F.A.* (*In re Vernell*), No. 07-15396, 2008 WL 434718, at *1 (Bankr. S.D. Fla. Feb. 13, 2008). Moreover, some bankruptcy courts within this District and other districts within this Circuit have *sua sponte* abstained after giving the parties an opportunity to be heard. (*See* Bankr. Op. at 16); *Superior Contracting Grp. Inc. v. Rachmale* (*In re LTC Holdings, Inc.*), 587 B.R. 25, 29 (Bankr. D. Del. 2018); *In re James O. Ezell*, No. 22-10627 (Bankr. D.N.J. Dec. 7, 2022), ECF No. 85 at 9, *aff'd sub nom.*, *Ezell v. PHH Mortg. Corp.*, No. 22-7404, 2023 WL 5049471 (D.N.J. Aug. 8, 2023). *But see Tonopah Solar Energy, LLC v. CMB Exp., LLC* (*In re Tonopah Solar Energy, LLC*), No. 21-219, 2022 WL 958117, at *8 (D. Del. Mar. 30, 2022) (compiling cases where courts abstained without giving notice and an opportunity to be heard). However, Natera points to no decisions from this District or Circuit *requiring* that bankruptcy courts give the parties an opportunity to be heard before abstaining.

While "there is little guidance from the Third Circuit on this issue" because "a court of appeals has no jurisdiction to review the application of discretionary abstention," *within* this Circuit, what caselaw there is cuts against requiring notice—and does so persuasively. *See In re*

*Tonopah Solar Energy, LLC*, 2022 WL 958117, at *8. In *In re Tonopah Solar Energy*, after surveying the cases identified above, the District Court for the District of Delaware concluded that providing the parties with an opportunity to be heard on permissive abstention was a "best practice" but not "a requirement." *Id.* The Court reached this conclusion because while "[p]ermissive abstention under [28 U.S.C.] § 1334(c)(1) contains no requirement for a motion[,] [m]andatory abstention under [28 U.S.C.] § 1334(c)(2) . . . does require[] a motion—and such a motion initiates a contested matter and triggers the notice and hearing requirements of [Federal Rule of Bankruptcy Procedure] 9014."[7] *Id.*

The Court agrees with this analysis. Congress knew how to create procedural requirements for abstention and did so in the context of mandatory abstention. Its decision not to do so in the context of permissive abstention is meaningful and must be respected. *See Polselli v. IRS*, 598 U.S. 432, 439 (2023) ("We assume that Congress 'acts intentionally and purposely' when it 'includes particular language in one section of a statute but omits it in another section of the same Act.'" (quoting *Sebelius v. Cloer*, 569 U.S. 369, 378 (2013))). Accordingly, like the District Court for the District of Delaware, this Court will not create a notice "requirement where none exists." *In re Tonopah Solar Energy, LLC*, 2022 WL 958117, at *8; *see also Ezell*, 2023 WL 5049471, at *2 n.4 (noting that, although it is "typically" given, notice is "not required in this Circuit"). The Bankruptcy Court's decision not to provide notice and an opportunity to be heard before *sua sponte* abstaining was not an abuse of discretion.

---

[7] Natera's argument that Rule 9014 should have applied to this case fails. (*See* Natera Br. at 17–18.) The full context of that Rule shows that it requires an opportunity to be heard *in response to a motion*. *See* Fed. R. Bankr. P. 9014(a) ("In a contested matter not otherwise governed by these rules, relief must be requested by motion. Reasonable notice and an opportunity to be heard must be given to the party *against whom relief is sought*." (emphasis added)). Because the Bankruptcy Court abstained *sua sponte*, there was no abstention motion to which to respond.

## B. THE BANKRUPTCY COURT'S ABSTENTION ANALYSIS

Natera challenges both the test applied by the Bankruptcy Court in deciding to abstain and the substance of the Bankruptcy Court's analysis. (Natera Br. at 18–27.) The Court addresses both points in turn.

### 1. <u>The Bankruptcy Court's Framework</u>

Natera argues that the Bankruptcy Court abused its discretion by failing to apply the twelve- or seven-factor tests that bankruptcy courts in this Circuit "typically" apply in determining whether to permissively abstain. (*Id.* at 20.) Natera points to numerous cases applying one of these tests but none showing that such a test is mandatory. (*Id.* at 20–23.) The reason why is simple: "the Third Circuit has never explicitly delineated factors that courts should consider in this context because 'appeals of district court decisions involving permissive abstention, whether or not the court abstains, are barred.'" *In re G-I Holdings Inc.*, 2017 WL 1788656, at *13 (quoting *Geruschat v. Ernest Young LLP*, 505 F.3d 237, 249 (3d Cir. 2007)). "As such, district courts in this circuit have not approached this type of analysis uniformly." *Id.* (quoting *Monmouth Inv., LLC v. Saker*, No. 09-3063, 2010 WL 143687, at *4 (D.N.J. Jan. 12, 2010)). Some courts apply a seven-factor test and some apply twelve. *See id.* "Since not all factors necessarily need to be considered, courts need only apply the factors flexibly, for their relevance and importance will vary with the particular circumstances of each case, and no one factor is necessarily determinative." *Id.* (cleaned up); *Shalom Torah Ctrs. v. Phila. Indem. Ins. Cos.*, No. 10-6766, 2011 WL 1322295, at *4 (D.N.J. Mar. 31, 2011) ("[N]ot all the factors necessarily need to be considered."). Overall, "[t]he decision to abstain is left to the broad discretion of the bankruptcy court." *In re G-I Holdings Inc.*, 2017 WL 1788656, at *13 (citing *Wood v. Wood* (*In re Wood*), 825 F.2d 90, 93 (5th Cir. 1987)); *see also Biase v. Nevoso, Pivirotto & Foster, P.A.* (*In re Barsan Contractors*), No. 10-3081, 2010 WL

3907116, at *7 (D.N.J. Sept. 30, 2010) (explaining that "these differences in formulation," i.e., whether a bankruptcy court applies a test with seven, twelve, or even fifteen factors, "simply serve to highlight the high degree of discretion inherent in the Bankruptcy Court's authority to exercise permissive abstention").

The relevant statute only states that "nothing in this section prevents a . . . court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1). It makes no mention of seven or twelve factors. *Cf. Wooden v. United States*, 595 U.S. 360, 385 (2022) (Gorsuch, J., concurring in the judgment) (describing the "multi-factor balancing test" at issue in that case as "a judicial gloss on the statute's terms—and one that is unnecessary to resolve the case at hand"). Instead, the statute provides a bankruptcy court with "broad discretion" to abstain, *In re G-I Holdings Inc.*, 2017 WL 1788656, at *13 (citing *In re Wood*, 825 F.2d at 93), in the "interest of justice, . . . interest of comity with State courts or respect for State law," 28 U.S.C. § 1334(c)(1). The various multi-factor tests exist to "assist courts in determining when or whether to exercise their discretionary abstention power." *In re Vanhook*, 468 B.R. 694, 701 (Bankr. D.N.J. 2012). They are "simply . . . a guide to the required inquiry; the wise exercise of discretion is rarely a matter of score-keeping or bean-counting." *In re Janssen*, 396 B.R. 624, 636 (Bankr. E.D. Pa. 2008) (quoting *Kerusa Co. v. W10Z/515 Real Est. Ltd. P'ship*, Nos. 04-708, 04-709, 04-710, 2004 WL 1048239, at *3 (S.D.N.Y. May 7, 2004)).

Here, because the Adversary Proceeding was a declaratory judgment action, the Bankruptcy Court considered the declaratory judgment abstention factors as set forth in *Kelly v. Maxum Specialty Insurance Group*, 868 F.3d 274 (3d Cir. 2017) and *Reifer v. Westport Insurance*

*Corp.*, 751 F.3d 129 (3d Cir. 2014) in deciding whether to abstain. (*See* Bankr. Op. at 8.) These factors match up with the statutory criteria for permissive abstention. As the Bankruptcy Court explained, under *Kelly*, "the existence . . . of a parallel state proceeding . . . is a 'significant factor'" in deciding whether to abstain. (*Id.* (quoting *Kelly*, 868 F.3d at 282).) The Bankruptcy Court further explained that abstention was justified by "the pending state court action, the convenience of the Delaware forum selected by the parties, the fact that Delaware law governs, and the parties' positions throughout the bankruptcy as to how and where contract interpretation issue[s] would be litigated." (*Id.* at 15.) These considerations align with the statutory factors of "comity with State courts [and] respect for State law." 28 U.S.C. § 1334(c)(1). In fact, they align with a number of the factors identified by the multi-factor tests. *See, e.g.*, *In re Tonopah Solar Energy, LLC*, 2022 WL 958117, at *9 (looking to, among other factors, "the extent to which state law issues predominate over bankruptcy issues" and "the presence of a related proceeding commenced in state court or other non-bankruptcy court"); *see also Shalom Torah Ctrs.*, 2011 WL 1322295, at *4 ("[N]ot all the factors necessarily need to be considered."). In light of this, applying the declaratory judgment abstention test rather than twelve-factor test "typically" used by courts in this District was not an abuse of discretion. (Natera Br. at 20.) Holding otherwise would be putting form over substance.

2. The Bankruptcy Court's Substantive Analysis

In addition to contesting the Bankruptcy Court's abstention framework, Natera also disputes the substance of its analysis.

*First*, Natera contends that the Bankruptcy Court erred in determining that the Delaware Action was more advanced or a "a step ahead" of the Adversary Proceeding. (*Id.* at 24 (quoting Bankr. Op. at 14).) Natera specifically takes issue with the Bankruptcy Court's observation that

"the APA[] is not filed on the docket in this case but is already part of the record in the pending Delaware Action." (Bankr. Op. at 14; Natera Br. at 24.) The Bankruptcy Court was correct, however. Natera emphasizes that the APA was on file "in the main chapter 11 case[]," but that fact is irrelevant because the Bankruptcy Court was comparing the status of the Delaware Action with the *Adversary Proceeding*. (Natera Br. at 24; *see* Bankr. Op. at 14 (noting that "the APA[] is not filed on the docket *in this case*" (emphasis added)).) The status of the APA in each case was simply a proxy for the status of the case. Natera also contends that because the Delaware action was stayed "[i]t is . . . *highly unlikely* that the Delaware Chancery Court is 'a step ahead' of the Bankruptcy Court in this process." (Natera Br. at 24 (emphasis added).) By merely speculating that the Bankruptcy Court erred in assessing the relative development of each case, Natera falls well short of carrying its burden of showing that the Bankruptcy Court clearly erred in assessing the status of the cases or abused its discretion in abstaining. *See Krasinski v. Walsh* (*In re Denochick*), 287 B.R. 632, 633 (W.D. Pa. 2003) ("[A]ppellants must show that the bankruptcy court's factual findings are clearly erroneous."); *Steven A. Conner, DPM, P.C.*, 2025 WL 289230, at *14 n.151.

*Second*, Natera contends that the presence of state law issues is not dispositive. (Natera Br. at 25 (citing *HQ Glob. Workplaces, Inc. v. Bank of N.S.* (*In re HQ Glob. Holdings, Inc.*), 293 B.R. 839, 845 (Bankr. D. Del. 2003)).) True enough, but the Bankruptcy Court did not treat the presence of state law issues as dispositive. Instead, it was one of a number of factors considered by the Bankruptcy Court. (Bankr. Op. at 15.) The very case cited by Natera supports the Bankruptcy Court's decision. It states that, although "not dispositive," state law issues predominating "'is a significant consideration'" that "favors abstention." *In re HQ Glob. Holdings, Inc.*, 293 B.R. at 845 (quoting *In re L & S Indus., Inc.*, 989 F.2d 929, 935 (7th Cir. 1993)).

*Third*, Natera argues that the Bankruptcy Court should not have abstained because the Adversary Proceeding was a core bankruptcy proceeding. (Natera Br. at 25–26.) Natera supports this argument by stating that "courts in this Circuit (and other courts) typically do not abstain from hearing core bankruptcy matters (such as rejection and assumption matters)." (*Id.* at 25.) Even assuming that is true, this argument, like many of Natera's other arguments, fails because it asks the Court to transform customary practice into a legal mandate. It does not follow from the fact that courts *tend* not to abstain from core matters that they *must* not. It is well established that "bankruptcy courts *may* abstain from hearing any proceeding, *including core matters*." *Stern v. Marshall*, 564 U.S. 462, 502 (2011) (emphasis added). In fact, permissive abstention's potential application to core matters is one of the features that distinguishes it from mandatory abstention, which is limited to non-core matters. *See Bricker v. Martin*, 348 B.R. 28, 34 (W.D. Pa. 2006) (Hardiman, J.), *aff'd*, 265 F. App'x 141 (3d Cir. 2008).

Relatedly, Natera points to the fact that "the Bankruptcy Court retained exclusive jurisdiction to 'resolve any matters related to . . . the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is a party.'" (Natera Br. at 27 (cleaned up) (quoting AX 14 at A-800).) Yet, Natera does not explain how allowing the APA to be interpreted in the Delaware Action would infringe on this exclusive jurisdiction.[8] Additionally, to the extent that Natera attempts to argue that the Bankruptcy Court should not have abstained where it had jurisdiction, this argument fails. A bankruptcy court can abstain "from any proceeding over which it has jurisdiction." *See Bricker*, 348 B.R. at 34. Indeed, "a federal court can abstain from exercising its jurisdiction *only if it has jurisdiction to abstain from*." *Hamilton v.*

[8] As Natera itself describes it, "[t]he Delaware Action is limited in scope. It is a declaratory judgment action in which Invitae asked the court to resolve the Parties' dispute concerning interpretation of the APA provisions describing how to calculate the 'Retention Accession Amount.'" (Reply Br. at 9.)

*Bromley*, 862 F.3d 329, 332 (3d Cir. 2017) (emphasis added). In fact, Natera admits that the Bankruptcy "Court still maintain[ed] discretion to abstain" despite the fact that it "retained exclusive jurisdiction." (Natera Br. at 27.) Accordingly, Natera has failed to show that the Bankruptcy Court erred in its abstention analysis.[9]

### C. Quasi Estoppel

To further justify abstention, the Bankruptcy Court applied the doctrine of quasi estoppel to prevent Natera from arguing "that rejection of the APA extinguishes Debtors' rights and claims and/or precludes Debtors from resolving the contract dispute in Delaware state court." (Bankr. Op. at 11–12.) Natera argues that this was error. (Natera Br. at 28–29.)

The parties agree that quasi estoppel applies where "a party (1) with knowledge of the relevant facts (2) takes a position inconsistent with its former position (3) which is to the disadvantage of another." (*Id.* at 28 (quoting Bankr. Evid. Manual § 4:1 (2024 ed.)); Opp. Br. at

---

[9] Natera devotes an entire section of its Reply Brief to arguing that the Delaware Action has certain limitations, specifically that the Delaware Action is not a parallel proceeding and that the Plan Administrator lacks standing in the Delaware Action. (Reply Br. at 9–14.) These arguments are absent from the Natera's Opening Brief. As arguments first made in Natera's Reply Brief, they are forfeited. *In re Niaspan Antitrust Litig.*, 67 F.4th 118, 135 (3d Cir. 2023).

True enough, in its Opening Brief, Natera mentioned in a footnote and parenthetical that the Bankruptcy Court ignored the issue of the Plan Administrator's standing. (Natera Br. at 9 n.10, 23.) These "passing" references, however, were insufficient to raise the issue in the first place. *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered [forfeited]."). Accordingly, this argument was not truly developed until the Reply Brief. In sum, the argument is forfeited because the passing references in the Opening Brief were too little, and the more substantive discussion in the Reply Brief was too late. *See Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is [forfeited] unless a party raises it in its opening brief, and for those purposes a passing reference to an issue will not suffice to bring that issue before this court." (cleaned up)).

Of course, ordinarily, courts have an obligation to address standing issues *sua sponte*, but that is because "standing is a 'threshold jurisdictional requirement' and [courts] 'have an obligation to examine [their] own jurisdiction.'" *N.J. Bankers Assoc. v. Att'y Gen. N.J.*, 49 F.4th 849, 855 (3d Cir. 2022) (quoting *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 399 F.3d 248, 254 (3d Cir. 2005)). Here, nothing about the Plan Administrator's standing or lack thereof *in the Delaware Action* affects this Court's jurisdiction over *this action*. Accordingly, the Court has no obligation to address this issue *sua sponte*.

26; *see* Bankr. Op. at 11); *see also 631 N. Broad St., LP v. Commonwealth Land Title Ins. Co.*, 778 F. App'x 164, 166 n.4 (3d Cir. 2019) ("The doctrine of quasi-estoppel operates to bar a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken by that party." (internal quotation marks omitted)).

Natera seems to suggest that it lacked knowledge of the relevant facts, but it presents no facts to show that it lacked knowledge. (Natera Br. at 28–29.) Accordingly, Natera has failed to carry its burden of showing that the Bankruptcy Court erred or abused its discretion. *See In re Denochick*, 287 B.R. at 633; *Steven A. Conner, DPM, P.C.*, 2025 WL 289230, at *14 n.151.

Natera also argues that "quasi-estoppel is reserved for situations in which 'it would be *unconscionable* to permit a person to maintain a position inconsistent with one in which he acquiesced' or one where the 'conscience of the court is *repelled* by the inconsistency.'" (*Id.* at 29 (bold omitted) (quoting *In re G-I Holdings, Inc.*, 580 B.R. 388 (Bankr. D.N.J. 2018)).) However, only "*[s]ome courts* require that the inconsistent position lead to unconscionable results." Bankr. Evid. Manual § 4:1 (2024 ed.) (emphasis added). The Third Circuit's articulation of the doctrine does not require unconscionability. *See 631 N. Broad Street, LP*, 778 F. App'x at 166 n.4. Even if unconscionability were required, Natera's only argument against unconscionability is that the Bankruptcy Court made no finding of "bad faith or . . . any improper purpose." (Natera Br. at 29 (quoting Bankr. Op. at 10).) This argument fails because it conflates unconscionability with bad faith. As the Bankruptcy Court properly held, quasi estoppel applies *without* a finding of bad faith; that is one of the factors that distinguishes it from judicial estoppel. (Bankr. Op. at 9–11); *see Forman v. Amboy Nat'l Bank* (*In re Price*), 361 B.R. 69, 78 (Bankr. D.N.J. 2007); *631 N. Broad St., LP*, 778 F. App'x at 166 n.4. So, the mere fact that the Bankruptcy Court made no finding of bad faith does not show that it abused its discretion in applying quasi estoppel.

Natera next argues that "Invitae did a 'bait and switch' on Natera" by representing that it "had contingent future payment rights under the APA," yet rejecting the APA. (Natera Br. at 29.) Natera supports this by directing the Court to an over 300-page document without specifying any particular pages. (*Id.* (citing AX 20)); *United States v. Morton*, 993 F.3d 198, 204 n.10 (3d Cir. 2021) ("[J]udges are not like pigs, hunting for truffles buried in the record." (quoting *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006))). Moreover, Natera does not explain the legal salience of this argument. Invitae filed plan documents in which it reserved and retained its cause of action under the APA "notwithstanding the rejection or repudiation" of that contract. (AX 13, at A-711, A-715.) Natera did not object to these or other plan documents. (Bankr. Op. at 3.) Nothing suggests that Natera lacked knowledge of Invitae's approach to the APA. Instead, Natera knew that Invitae could reject the APA and retained its right to sue under the APA even in the event of such a rejection.[10]

Accordingly, the Bankruptcy Court did not err in its application of quasi estoppel or abuse its discretion in any other part of its analysis. The Bankruptcy Court's Order is **AFFIRMED**.

---

[10] In a footnote, Natera also argues that more "specific reservation of rights [language] preserved *only for Natera* the right to initiate a declaratory judgment action in Delaware." (Natera Br. 9 n.11.) As an initial matter this argument is forfeited because it was made "in passing," specifically, "in a footnote." *John Wyeth & Bro. Ltd.*, 119 F.3d at 1076 n.6. Even on the merits, this argument fails because Natera does not explain why a more specific reservation of rights for Natera would undermine the general reservation of rights by Invitae as discussed above.

## CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the Bankruptcy Court's decision to abstain. An appropriate Order accompanies this Opinion.

**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: April 27, 2026